Priority ✓
Send ✓
Enter ✓
Closed
JS-5/JS-6
JS-2/JS-3
Scan Only

FILED
CLERK, U.S. DISTRICT COURT
JUL 21 2005
CENTRAL DISTRICT OF CALIFORNIA
BY DEPUTY

ENTERED
CLERK, U.S. DISTRICT COURT
JUL 25 2005
CENTRAL DISTRICT OF CALIFORNIA
BY DEPUTY

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MATTHEW SUSMAN,<br>Plaintiff,<br>v.<br>JO ANNE B. BARNHART, Commissioner of Social Security,<br>Defendant. | No. CV 04-3737-JTL<br>MEMORANDUM OPINION AND ORDER |

**PROCEEDINGS**

On May 26, 2004, Matthew Susman ("plaintiff") filed a Complaint seeking review of the Commissioner's denial of his application for disability insurance benefits. On September 3, 2004, the parties filed a Consent to Proceed Before United States Magistrate Judge Jennifer T. Lum. Thereafter, on December 10, 2004, defendant filed an Answer to Complaint. On February 16, 2005, the parties filed their Joint Stipulation.

The matter is now ready for decision.

///

///

**BACKGROUND**

On May 29, 1998, plaintiff filed applications for Disability Insurance Benefits and Supplemental Security Income payments. (Administrative Record ["AR"] at 96-110). Plaintiff alleged that beginning on April 22, 1998, he was unable to work because he suffered from the following impairments: mood swings, depression, bipolar disorder and problems with the knees and back. (AR at 61, 122). Plaintiff later amended his onset date to June 11, 1998. (AR at 158). The Commissioner denied plaintiff's application for benefits, initially and upon review. (AR at 55-58, 61-65).

On November 18, 1998, plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). (AR at 66-67). After the hearing, Administrative Law Judge Linwood Perkins Jr. issued a favorable decision on October 5, 1999, finding that plaintiff was disabled as of the amended date of June 11, 1998. (AR at 40-53). The October 5, 1999 decision was vacated on May 31, 2001, for the purpose of determining whether plaintiff performed substantial gainful activity after plaintiff's disability onset date. (AR at 72-73).

On November 14, 2001, Administrative Law Judge Samuel W. Warner conducted a hearing in Los Angeles, California, for that purpose. (AR at 530). Plaintiff appeared at the hearing with his counsel and testified. (AR at 532-44). On January 23, 2002, the ALJ conducted a supplemental hearing. (AR at 545). Plaintiff testified at the supplemental hearing. Sandra Snyder, a vocational expert, was also present. (AR at 547-57). On September 18, 2002, a final supplemental hearing was held. (AR at 558-71). Plaintiff failed to appear and testify, although his counsel was present. (AR at 561). Dr. Franklin Drucker, a medical expert, and Ruth A. Arnush, a vocational expert,

both testified. (AR at 566-71).

On November 29, 2002, the ALJ issued his decision denying benefits. (AR at 21-30). In his decision, the ALJ concluded that plaintiff suffered from mood disorder, NOS, an impairment that is severe within the meaning of the Social Security Regulations. (AR at 25). According to the ALJ, however, this impairment did not meet or equal any of the criteria contained in the Commissioner's Listing of Impairments, 20 C.F.R. Section 404, Subpart P, Appendix 1. (Id.). The ALJ concluded that plaintiff retained the residual functional capacity to perform work at all exertional limits, perform simple one or two step instructions, relate and interact a little with co-workers and the public, maintain concentration and attention for simple repetitive work, and tolerate low job-related stress. (AR at 30). But ultimately, the ALJ found that plaintiff was not disabled pursuant to the Social Security Act. (AR at 22).

On December 13, 2001, plaintiff filed a timely request with the Appeals Council for review of the ALJ's decision. (AR at 10). The Appeals Council subsequently affirmed the ALJ's decision. (AR at 4-6).

**PLAINTIFF'S CONTENTIONS**

Plaintiff makes the following claims in the parties' Joint Stipulation:

1. The ALJ erred in relying on the vocational expert's opinion because the vocational expert premised her opinion on an incomplete hypothetical.

2. The ALJ failed to satisfy his step five burden of identifying other work that plaintiff could perform consistent with

his residual functioning capacity.

## STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), this Court reviews the ALJ's decision to determine whether the ALJ's findings are supported by substantial evidence and whether the proper legal standards were applied. DeLorme v. Sullivan, 924 F.2d 841, 846 (9th Cir. 1991). Substantial evidence means "more than a mere scintilla" but less than a preponderance. Richardson v. Perales, 402 U.S. 389, 401 (1971); Desrosiers v. Secretary of Health & Human Servs., 846 F.2d 573, 575-76 (9th Cir. 1988).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson, 402 U.S. at 401. This Court must review the record as a whole and consider adverse as well as supporting evidence. Green v. Heckler, 803 F.2d 528, 529-30 (9th Cir. 1986). Where evidence is susceptible of more than one rational interpretation, the ALJ's decision must be upheld. Gallant v. Heckler, 753 F.2d 1450, 1452 (9th Cir. 1984).

## DISCUSSION

### A. The Sequential Evaluation

The Commissioner has established a five-step sequential process for determining whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920 (1991); Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987). At step one, disability benefits are denied if the Commissioner determines that the claimant is engaged in substantial gainful activity. (Id. at 140). At step two, the Commissioner evaluates whether the claimant has a medically severe impairment which

significantly limits his physical or mental ability to do basic work activities. (Id. at 140-41). Step three requires a consideration of whether the claimant's impairment is equivalent to one of a number of listed impairments that are so severe as to preclude substantial gainful activity. (Id. at 141). If the impediment meets or equals one of the listed impairments, the claimant is presumptively disabled. Id. If the impairment is not one that is conclusively presumed to be disabling, step four of the evaluation determines whether the impairment prevents the claimant from performing work he has performed in the past. Bowen, 482 U.S. at 141. If the claimant cannot perform his past work, the fifth and final step determines whether he is able to perform other work in the national economy in light of his age, education and work experience. (Id. at 142). The claimant is entitled to disability benefits only if he is not able to perform such work. (Id.).

B.  **Reliance on Vocational Expert's Testimony**

Plaintiff claims that the ALJ erred in relying on the vocational expert's testimony because the ALJ failed to give the vocational expert a complete hypothetical. Specifically, plaintiff faults the ALJ for failing to ask the vocational expert about plaintiff's restrictions in the areas of concentration, persistence, and pace. Plaintiff notes that the ALJ assessed moderate restrictions in these areas regarding plaintiff's ability to work. (AR at 27). Yet, the ALJ neglected to include these limitations in the hypothetical that he presented to the vocational expert.

At the hearing, the ALJ posed the following hypothetical to the vocational expert:

///

> If we assume that a hypothetical individual is a younger individual in this case between the ages of 32 and 37 years and has a high school education and ability to communicate in English and past work experience as the Claimant has and this hypothetical individual has no exertional limitations, but needs a job that would be classified as having simple, repetitive tasks and no more than average production in pace, would this hypothetical individual be able to do the past work?

(AR at 570). The vocational expert responded that the hypothetical individual would not be able to perform the past work, but that other jobs existed that could accommodate these limitations. (Id.). The vocational expert then opined that the hypothetical individual had the residual functional capacity to work as a vehicle cleaner and a bill poster, which are medium and unskilled jobs. (Id.).

The ALJ relied on this testimony in his decision and found that plaintiff had the residual functional capacity to work as either a vehicle cleaner or bill poster. (AR at 29). Plaintiff challenges the ALJ's reliance on this testimony, arguing that the ALJ failed to include as part of the hypothetical to the vocational expert, plaintiff's deficiencies in the areas of pace, persistence, and concentration. (AR at 27) (ALJ noting that plaintiff has moderate difficulties in maintaining concentration, persistence, or pace). Accordingly, plaintiff argues that the ALJ's failure to do so renders the ALJ's subsequent reliance on the vocational expert's testimony untenable. As discussed below, the Court disagrees.

In order for a vocational expert's testimony to constitute substantial evidence, the hypothetical question posed must "consider all of the claimant's limitations." Andrews v. Shalala, 53 F.3d 1035, 1044 (9th Cir. 1995). While the ALJ need not include every alleged impairment in her hypothetical, she must make specific findings explaining her rationale for disbelieving any subjective complaints that are not included. Copeland v. Bowen, 861 F.2d 536, 540 (9th Cir. 1988); Gallant v. Heckler, 753 F.2d 1450, 1456 (9th Cir. 1984).

Here, the ALJ's hypothetical accurately reflected the limitations that he assessed on plaintiff's ability to work. The ALJ qualified his assessment regarding plaintiff's restrictions in concentration, pace, or persistence by finding that plaintiff could "maintain concentration and attention for simple repetitive work." (AR at 27). The ALJ specifically made findings that plaintiff retained the functional capacity to perform simple one or two step instructions, maintain concentration and attention for simple repetitive work, and tolerate low job-related stress.[1] (AR at 30). The hypothetical that

---

[1] The ALJ's findings comport with plaintiff's most recent medical evaluation on March 29, 2002 opining on his functioning capacity. A Complete Psychiatric Evaluation by Barry Edelman, M.D., an examining physician, made the following assessment of plaintiff's functional ability:

> The claimant would be able to understand, remember, and follow simple instructions.... The claimant would be able to maintain concentration on simple work. The claimant would be able to maintain adequate pace doing simple work from a psychiatric perspective. The claimant would be able to interact sufficiently with peers, the public and supervisors.

(AR at 502).

(continued...)

he posed to the vocational expert involved "simple, repetitive tasks and no more than average production in pace" in accordance with these findings. (AR at 570). Thus, the ALJ's hypothetical to the vocational expert adequately reflected plaintiff's limitations. Consequently, the ALJ committed no error in relying on the vocational expert's opinion.

C. **Conflict Between the Vocational Expert's Testimony and the DOT**

In his second claim, plaintiff challenges the ALJ's adoption of the vocational expert's testimony that plaintiff had the residual functional capacity to perform work as either a vehicle cleaner or a bill poster. Specifically, plaintiff claims that the reasoning level required for these two jobs under the Dictionary of Occupational Titles ("DOT") conflict with the ALJ's findings regarding his functional capacity. Since the opinion provided by the vocational expert is inconsistent with the DOT, the ALJ must resolve this conflict. Plaintiff claims the ALJ committed error in failing to provide an explanation of how he resolved the conflict.

The DOT describes the duties and requirements of the many jobs that it chronicles. In doing so, the DOT applies a General Education Development ("GED") scale to each job. Three sections comprise the GED: (1) reasoning development; (2) mathematical development; and (3)

---

[1](...continued)

The ALJ rejected the opinion of Bert James Schloss, M.D., who opined on February 17, 2002 that plaintiff suffered from extreme difficulties in maintaining concentration, persistence, or pace. (AR at 484). The ALJ determined that Dr. Scholss' assessments were unsupported by objective medical findings, were based on past records rather than current treatment records, were based primarily on plaintiff's subjective complaints, and were inconsistent with other medical evidence in the record. (AR at 27).

language development. For each job, the DOT assigns each of these three sections a number between one and six, one being the least complex and six being the most complex. The DOT identifies both a vehicle cleaner and a bill poster as level two reasoning development occupations. DOT 229.667-010, 919.687-014 (4th ed. 1991). Level two reasoning development occupations require an individual to perform the following:

> Apply common sense understanding to carry out detailed but uninvolved written and oral instructions. Deal with problems involving a few concrete variables in or from standardized situations.

DOT, Vol. 1, App. C. at 1010 (4th ed. 1991). Plaintiff contends that the level two reasoning requirements of both occupations deviate from the ALJ's determination that plaintiff possesses the functional capacity to perform "simple one or two step instructions." (AR at 30). Rather, plaintiff contends that the vocational expert should have recommended jobs that fall within level one reasoning development occupations. Occupations in this first level require an individual to perform the following:

> Apply commonsense understanding to carry out simple one- or two-step instructions. Deal with standardized situations with occasional or no variables in or from these situations encountered on the job.

(Id.). As discussed below, the Court agrees.

"In determining what exertional demands are required to perform a type of work, the ALJ may rely on the general job categories of the

Dictionary [of Occupational Titles], with its supplementary Selected Characteristics, as presumptively applicable to a claimant's prior work." Hill v. Barnhart, 2003 WL 151536 at *4 (N.D. Cal. Jan. 15. 2003). Alternatively, an ALJ may rely on a vocational expert's testimony to determine the demands of a claimant's past relevant work. Light v. Social Sec. Admin., 119 F.3d 789, 793 (9th Cir. 1997). But when the expert's testimony conflicts with the DOT, the ALJ may rely on the expert "only insofar as the record contains persuasive evidence to support the deviation." Johnson v. Shalala, 60 F.3d 1428, 1435 (9th Cir 1995). "Evidence sufficient to permit such a deviation may be either specific findings of fact regarding the claimant's residual functionality, or inferences drawn from the context of the expert's testimony." Light, 119 F.3d at 793 (citations omitted).

Here, the reasoning requirements of the occupations that plaintiff could perform, as identified by the vocational expert and subsequently adopted by the ALJ, deviate from the ALJ's findings with respect to plaintiff's functioning capacity. The hypothetical that the ALJ presented to the vocational expert focused on jobs involving simple, repetitive tasks. (AR at 570). The vocational expert identified the jobs of vehicle cleaner and bill poster as two occupations that met the limitations set forth in the hypothetical. (Id.). The DOT, however, classified these two jobs as level two reasoning development occupations, which require individuals to perform more than simple and repetitive work. Indeed, such occupations would require plaintiff to follow "detailed but uninvolved written and oral instructions" and to "[d]eal with problems involving a few concrete variables in or from standardized situations." DOT Vol. 1, App. C. at 1010 (4th ed. 1991). Moreover, the requirements of

level two occupations exceed those of a level one occupation, which require workers to "carry out simple one- or two-step instructions" and to "[d]eal with standardized situations with occasional or no variables in or from these situations encountered on the job." (Id.).

Because this conflict exists, the Court can affirm the ALJ's decision only if the record contains persuasive evidence to support the deviation. See Johnson, 60 F.3d at 1435. The Ninth Circuit requires specific findings of fact regarding a plaintiff's residual functionality or inferences drawn from the context of the vocational expert's testimony in support of a deviation. Light, 119 F.3d at 793. Here, the ALJ did not provide reasons for his adoption of the vocational expert's deviation and the Court cannot identify any persuasive evidence in the record to justify this deviation. Accordingly, the ALJ erred in relying on the vocational expert's testimony without making specific findings to explain his deviation from the DOT.

**D. Remand is Required to Remedy Defects in the ALJ's Decision**

The choice of whether to reverse and remand for further administrative proceedings, or to reverse and simply award benefits, is within the discretion of the Court. McAlister v. Sullivan, 888 F.2d 599, 603 (9th Cir. 1989). Remand is appropriate where additional proceedings would remedy defects in the ALJ's decision, and where the record should be developed more fully. McAlister, 888 F.2d at 603; Rodriguez v. Bowen, 876 F.2d 759, 763 (9th Cir. 1990). An award of benefits is appropriate where no useful purpose would be served by further administrative proceedings, see Gamble v. Chater, 68 F.3d 319, 322-23 (9th Cir. 1995), where the record has been fully developed, see

Schneider v. Commissioner of the Social Security Administration, 223 F.3d 968, 976 (9th Cir. 2000); Ramirez v. Shalala, 8 F.3d 1449, 1455 (9th Cir. 1993), or where remand would unnecessarily delay the receipt of benefits. See Smolen v. Chater, 80 F.3d 1273, 1292 (9th Cir. 1996).

In this case, the Court finds remand appropriate. On remand, the ALJ must determine whether plaintiff has the residual functional capacity to perform jobs that exist in the national and local economies.

**ORDER**

The Court, therefore, VACATES the decision of the Commissioner of Social Security Administration and REMANDS the case for further administrative proceedings consistent with the Memorandum Opinion and Order.

**LET JUDGMENT BE ENTERED ACCORDINGLY**

DATED: July 21, 2005

JENNIFER T. LUM
UNITED STATES MAGISTRATE JUDGE